IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 24-cr-00118-RMR

**UNITED STATES OF AMERICA,**

   Plaintiff,

v.

1. **ELITE DIESEL SERVICE, INC.,**

   Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Rebecca S. Weber, Assistant United States Attorney for the District of Colorado and Linda S. Kato, Special Assistant United States Attorney for the District of Colorado, and the defendant, Elite Diesel Service Inc. ("Elite Diesel"), by and through its undersigned attorney, Rick Kornfeld, and through its authorized representative, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.   AGREEMENT

#### A. Defendant's Plea of Guilty:

The defendant, through its authorized representative (set forth in Attachment A), agrees:

(1)   to waive indictment and plead guilty to an Information charging a violation of Conspiracy to Violate the Clean Air Act, 18 U.S.C. § 371 and 42 U.S.C. § 7413(c)(2)(C);



(2) to waive certain appellate and collateral attack rights, as explained in detail below;

(3) to cooperate as more fully described below;

(4) to be liable for a total assessment of **$50,000** (comprised of a fine of **$37,500** and an amount of **$12,500** dedicated to a community service project);[1]

(5) to agree to enter into a Corporate Compliance and Reporting Program (detailed in Attachment B) as a term of Probation.

### B. Government's Obligations:

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to recommend a sentence of a **five-year** term of probation, a total assessment of **$50,000** as described above, and that the defendant enter into a Corporate Compliance and Reporting Program (detailed in Attachment B) as a term of Probation.[2]

The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).

### C. Defendant's Waiver of Appeal:

---

[1] The government recommends that the $12,500 portion of the assessment dedicated to a community service project be due within 60 days of sentencing, and that the remaining $37,500 fine be paid in installments over the course of the term of Probation.

[2] The government calculated a substantially higher total assessment amount using a formula based on the number of vehicles Elite Diesel tampered with. Subsequent financial analysis determined that Elite Diesel had no ability to pay that fine amount. Consequently, the parties agreed to a total assessment of $50,000.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 371;

(2) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 12; or

(3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how its sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2) the defendant was deprived of the effective assistance of counsel; or

(3) the defendant was prejudiced by prosecutorial misconduct.

### D. Defendant's Cooperation:

The defendant, through its authorized representative, agrees to provide truthful, complete, and accurate information relating to any matter about which the defendant may possess knowledge, information, or materials being investigated by the government, and agrees to cooperate fully with the government. Lies, deliberate falsehoods or misleading information provided during the cooperation with the government would be grounds for rescission of this plea agreement as well as possible further prosecution for perjury or false statements. This cooperation will include, but is not limited to, the following:

a) The defendant, through its representative, agrees to be fully debriefed, and to attend all meetings at which its presence is requested, concerning its participation in and knowledge of all criminal activities.

b) The defendant agrees to affirmatively furnish to the government all documents and other material that may be relevant and that are in the defendant's possession or control.

c) The defendant, through its representative, agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government.

d) The defendant, through its representative, agrees to at all times give complete, truthful, and accurate information and testimony and to fully and truthfully disclose all information with respect to the activities of the defendant and others concerning all matters about which the government inquires.

e) The defendant agrees it will not violate federal, state, or local law while awaiting sentencing in this case. The defendant further agrees to abide by all the terms and conditions of any bond executed in the defendant's case. The government may consider any such violations a material breach of the defendant's agreement to cooperate with the government.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of 18 U.S.C. § 371 and 42 U.S.C. § 7413(c)(2)(C) are as follows:

## 18 U.S.C. § 371

*First:* The defendant agreed with at least one other person to violate the law.

*Second:* One of the conspirators engaged in at least one overt act furthering the conspiracy's objective.

*Third:* The defendant knew the essential objective of the conspiracy.

*Fourth:* The defendant knowingly and voluntarily participated.

*Fifth:* There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged. *See* 10th Cir. P.J.I. § 2.19.

## 42 U.S.C. § 7413(c)(2)(C)

*First:* The defendant, a person,[3]

*Second:* Tampered with or rendered inaccurate;

*Third:* A monitoring device or method;

*Fourth:* Required under the Clean Air Act;

*Fifth:* The defendant acted knowingly.[4]

### III.   STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count One of the Information is a term of five years of probation, a maximum fine of $500,000 or twice the amount of the gross gain or twice the amount of the gross loss resulting from the offense, and a $400 mandatory victim's fund assessment fee.

---

[3] "The term 'person' includes an individual, corporation, partnership, association, State, municipality, political subdivision of a State, and any agency, department, or instrumentality of the United States and any officer, agent, or employee thereof." 42 U.S.C. § 7602(e).

[4] *See United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998).

## IV. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

Elite Diesel Service Inc. ("ELITE DIESEL") is a diesel repair shop that was located in Windsor, Colorado from 2016 to 2021. It is co-owned and operated by Troy Lake ("LAKE"). From in or around January 2017 through in or around December 2020, LAKE and other ELITE DIESEL employees acting at LAKE'S direction tampered with the computerized on-board diagnostic ("OBD") systems on hundreds of heavy-duty commercial "Class 8" diesel vehicles, including long haul semi-tractor trailer trucks in order to prevent the OBDs from monitoring the emissions control system. Emissions control systems include emission control hardware required to be installed in vehicles to control and limit the pollutants emitted in the exhaust from the vehicles' tailpipes. Hardware components of the emissions control systems include the diesel particulate filter (DPF), selective catalytic reduction (SCR) system, diesel oxidation catalyst (DOC),

and exhaust gas recirculation (EGR) system.

The OBD system operates within a vehicle's "electronic control module" (ECM) and is composed of software that monitors emissions control systems and components. If an emissions-related malfunction or problem occurs, the OBD system causes a malfunction indicator light (MIL) to be illuminated on the vehicle's dashboard and a diagnostic trouble code (DTC) to be stored in the vehicle's computer memory. These functions facilitate the detection and diagnosis of a malfunction in the emissions control system. If the malfunction is significant and not resolved, the OBD system may limit the top speed of some vehicles to as low as five miles per hour (an effect commonly referred to as "limp mode" or "power reduced mode"), providing an incentive for the vehicle's operator to seek repairs. Tampering with an OBD is frequently referred to as "tuning." One purpose for "tuning" an OBD is to allow the vehicles to continue to seemingly operate normally while the emissions control system is disabled, which reduces the high costs associated with maintaining or repairing components of the emissions control systems on heavy-duty diesel trucks. However, as a consequence, tampered vehicles spew substantially more deleterious pollutants such as nitrogen oxides (NOx), carbon monoxide (CO), particulate matter (PM), and non-methane hydrocarbons (NMHC), including pollutants designated under the Clean Air Act as "hazardous air pollutants" and "mobile source air toxics" into the air, presenting a risk to the environment and public health. Tests conducted by EPA demonstrate that completely deleting a class 8 vehicle's emissions controls can increase the vehicle's excess tailpipe emissions of NOx up to 11 times, CO over 100 times, NMHC up to 25 times, and PM over 100 times. As a result of the vehicle hardware and software

tampering performed by ELITE DIESEL and its co-conspirators, these vehicles have released tailpipe emissions over the legal limit in the amount of at least 1,300 tons of excess NOx, 30 tons of excess NMHC, 600 tons of excess CO, and 30 tons of excess PM.

Some customers of ELITE DIESEL brought their vehicles to ELITE DIESEL's facility, where the OBD systems were tampered with on-site. Other customers of ELITE DIESEL removed the ECM and shipped it to ELITE DIESEL. ELITE DIESEL then tampered with the OBD contained in the ECM and returned the ECM to the customer, who re-installed the ECM in the vehicle. ELITE DIESEL also engaged in this tampering remotely, by instructing other diesel shops and customers to connect a laptop computer to the vehicle's OBD port. Through an internet connection, LAKE and other ELITE DIESEL employees acting at LAKE's direction would download software "tunes" onto the vehicle's computer to reprogram the vehicle's OBD system. These tunes would tamper with the OBD system's monitoring function so that it would not detect malfunctions in the selective catalytic reduction ("SCR") and other emissions controls components.

In addition to tampering with the OBDs, ELITE DIESEL, LAKE, and other diesel shops throughout the country would generally remove or alter hardware in order to disable the vehicle's emissions controls. These physical changes to the vehicles included hollowing out or removing the DPF, DOC, and SCR, and removing or blocking off the EGR system.

When customers brought vehicles to ELITE DIESEL's physical location, ELITE DIESEL employees would typically remove or disable the hardware. In other cases,

LAKE and two ELITE DIESEL employees acting at LAKE's direction, would remotely tamper with the OBDs while a different diesel shop removed or disabled the hardware.

ELITE DIESEL and LAKE conspired with the following eight diesel shops to tamper with 202 heavy-duty diesel motor vehicles that were required under the Clean Air Act to have OBD systems to monitor the emissions controls, for a total amount of at least $477,000 paid to Elite by these eight diesel shops, all of which have resolved their cases with the government in the below-referenced case numbers.

| Entity | Minimum Number of Tampered Vehicles | Case Number | Minimum Amount Paid to Elite Diesel |
| --- | --- | --- | --- |
| Endrizzi Diesel | 60 | 22-cr-64-RMR | $149,000 |
| Pro Diesel | 34 | 22-cr-62-DDD | $76,000 |
| McDermid Sales & Service | 32 | 22-cr-65-PAB | $71,000 |
| Hammes Repair | 19 | 22-cr-177-RM | $47,000 |
| Perkins Diesel | 10 | 22-cr-218-RM | $27,000 |
| Beatty Bodyworks | 13 | 22-cr-252-DDD | $29,000 |
| Crossroads Repair | 19 | 22-cr-351-RM | $43,000 |
| ATP Oilfield Services | 15 | 23-cr-32-NYW | $35,000 |
| **Total** | **202** | N/A | **$477,000** |

ELITE DIESEL and LAKE also conspired with other diesel shops and individual customers to tamper with at least 147 heavy-duty diesel motor vehicles that were required under the Clean Air Act to have OBD systems to monitor the emissions controls, for a total amount of at least $362,000 paid to Elite by these other shops or individual customers.

| Entity | Minimum Number of Tampered Vehicles | Minimum Amount Paid to Elite Diesel |
|---|---|---|
| Other Shops | 93 | $220,000.00 |
| Individual Customers | 54 | $142,000.00 |
| **Total** | **147** | **$362,000.00** |

In furtherance of the conspiracy and to effect its objects, coconspirators, including ELITE DIESEL, LAKE, and others, committed the following overt acts:

ELITE DIESEL, LAKE and employees of ELITE DIESEL tampered with the OBD systems installed in hundreds of heavy-duty diesel vehicles that were operated in several states, including Colorado.

ELITE DIESEL sent hundreds of invoices to other diesel shops charging between $2,000 and $4,000 for tampering with the OBD on each vehicle. ELITE DIESEL typically used code language such as "ECM Repair" or "Cummins ECM Repair" on the invoice to disguise the line item for emissions control system tampering.

ELITE DIESEL employees instructed other diesel shops and individual customers to fill out an "ECM Form" that provided key parameters for the vehicle, such as the engine serial number, the truck make and model, the VIN, the tire brand and size, and the turbo type. ELITE DIESEL then used this information to tune the OBD to prevent it from monitoring for and detecting malfunctions in the emissions control system. Many of these "ECM Forms" directed ELITE DIESEL to "delete" the vehicle, using language such as "DPF and DEF[5] Delete" or "EGR Delete."

LAKE personally conducted the emissions tampering for the following vehicles: a

---

[5] "DEF" stands for "diesel exhaust fluid," which is injected into a vehicle's SCR to reduce NOx emissions by chemically converting exhaust gas into nitrogen and water. "DEF delete" ostensibly refers to tampering with the SCR.

2011 Cummins on November 16, 2017, and a 2014 Cummins on October 8, 2018.

In an attempt to conceal their illegal tampering activities, ELITE DIESEL employees acting at LAKE's direction routinely requested that customers sign a "waiver" stating that the deleted vehicle was "intended for off-road use in competition only, and [was] not to be used on public roads or highways," when in fact that statement was false and the vehicles were driven on public roads.

## V.     ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

        a)      Under Section § 2Q1.2(a), the base offense level is **8**.

        b)      Because the offense resulted in an ongoing, continuous, or repetitive emission of a pollutant into the environment, a **6**-level

increase applies. See § 2Q1.2(b)(1)(A).

c) There are no victim-related, role-in-offense, obstruction, grouping, and/or multiple-count adjustments.

d) The adjusted offense level is **14**.

e) The parties agree that a 2-level decrease for acceptance of responsibility applies. See § 3E1.1(a). The resulting total offense level is **12**.

f) Because the defendant is an organization, the advisory guideline range for imprisonment is not relevant.

g) Because the defendant is an organization, the provisions of Chapter 8 apply in the determination of a fine. Pursuant to § 8C2.1, the fine guidelines set forth in §§ 8C2.2 through 8C2.9 do not apply to offenses involving the environment under 2Q. Thus, pursuant to § 8C2.10, the total fine referenced in this Agreement satisfies the provisions of 18 U.S.C. §§ 3553 and 3572.

h) Pursuant to § 8B1.3, community service may be ordered as a condition of probation where such community service is reasonably designed to repair the harm caused by the offense.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VI.   ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor

the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 6/12/24

Troy Lake
Authorized Representative
Elite Diesel

Date: 6/12/24

Rick Kornfeld
Attorney for Defendant

Date: 6/12/24

Rebecca S. Weber
Assistant U.S. Attorney

Date: 6/12/24

Linda S. Kato
Special Assistant U.S. Attorney

## ATTACHMENT A

## CERTIFICATE OF AUTHORIZED REPRESENTATIVE

I have read the Plea Agreement between ELITE DIESEL SERVICE, INC. ("ELITE DIESEL" or "the defendant") and the United States Attorney's Office for the District of Colorado and carefully reviewed every part of it with outside counsel.

I hereby certify that I am a duly appointed corporate officer and/or authorized representative of ELITE DIESEL

I am authorized, empowered, and directed to take any and all actions on behalf of ELITE DIESEL as may be necessary or appropriate and to enter into and comply with all provisions of a Plea Agreement with the United States Attorney's for the District of Colorado.

I understand the terms of the Plea Agreement and voluntarily agree, on behalf of ELITE DIESEL, to each of its terms. Before signing this agreement, I consulted with outside counsel for ELITE DIESEL. Outside counsel fully advised me of the company's rights, possible defenses, the Sentencing Guidelines provisions, and the consequences of entering into this Plea Agreement.

No promises or inducements have been made other than those contained in the Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement.

I am satisfied with outside counsel's representation in this matter.

By: _____        Date: 6/12/24

Troy Lake
Co-Owner
ELITE DIESEL

## ATTACHMENT B

## COMPLIANCE PROGRAM

ELITE DIESEL SERVICE, INC. ("the defendant"), through its authorized representative (set forth in Attachment A), agrees to the following monitoring and compliance measures during the term of Probation:

Definitions:

a. "Vehicle" means any (1) "motor vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(2), which includes any self-propelled truck, semi-truck, car, van, camper, bus, or any other vehicle used to transport persons or property on streets or highways; and (2) "nonroad vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(11), which includes any engine-powered vehicle such as construction, agricultural, or recreational equipment that is not designed for use on streets or highways. For purposes of this Compliance Program, the term "vehicle" does not include vehicles that are used solely for competition and are not authorized for use on streets or highways.

b. "Vehicle tampering" means any steps taken to remove, render inoperable, override, modify, or alter any component of any vehicle's emissions control system, including but not limited to the selective catalytic reduction (SCR), exhaust gas recirculation (EGR), periodic trap oxidizer (PTOX), diesel particulate filter (DPF), diesel oxidation catalyst (DOC), or engine control module (ECM), or the onboard diagnostic (OBD) system, through the use of a "delete device."

c. "Delete device" includes, but is not limited to, an, "EGR delete," "DPF delete," "defeats," "defeat device," "delete kit," "upgrade kit," "conversion kit," "tuner," "tune," "programmer," "block plate," "straight pipe," or any other device designed to override, modify, or alter any component of a vehicle's emissions control system.

d. "Tampered vehicle" means any vehicle that has been modified pursuant to "vehicle tampering."

Terms:

1. The defendant agrees to permit unrestricted entry to federal, state, and local officials to inspect premises, including hard copy and electronic documents, at any time and without advance notice, for violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).

2. The defendant agrees not to engage in, or conspire or cause others to engage in, vehicle tampering.

1

3. For any tampered vehicle, the defendant agrees not to work on, repair, or service (1) the OBD system or (2) any hardware relating to the emissions control system, including the SCR, EGR, PTOX, DPF, and DOC.
    a. Exception: the defendant may perform work on the OBD and emissions control system of a tampered vehicle for the purpose of restoring the emissions control system on the tampered vehicle to its certified configuration, that is, restoring it to stock.

4. The defendant agrees to submit to the U.S. Attorney's Office an annual report (described in Attachment C) detailing the company's compliance measures and confirming, if true, that the company has not knowingly engaged in any violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3). The first certification shall be submitted one year from the date on which the Information is filed, and shall be filed annually on that date until the Term of the Agreement is concluded.

## ATTACHMENT C

## **ANNUAL REPORT**

Definitions:

a. "Vehicle" means any (1) "motor vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(2), which includes any self-propelled truck, semi-truck, car, van, camper, bus, or any other vehicle used to transport persons or property on streets or highways; and (2) "nonroad vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(11), which includes any engine-powered vehicle such as construction, agricultural, or recreational equipment that is not designed for use on streets or highways. For purposes of this Compliance Program, the term "vehicle" does not include vehicles that are used solely for competition and are not authorized for use on streets or highways.

b. "Vehicle tampering" means any steps taken to remove, render inoperable, override, modify, or alter any component of any vehicle's emissions control system, including but not limited to the selective catalytic reduction (SCR), exhaust gas recirculation (EGR), periodic trap oxidizer (PTOX), diesel particulate filter (DPF), diesel oxidation catalyst (DOC), or engine control module (ECM), or the onboard diagnostic (OBD) system, through the use of a "delete device."

c. "Delete device" includes, but is not limited to, an, "EGR delete," "DPF delete," "defeats," "defeat device," "delete kit," "upgrade kit," "conversion kit," "tuner," "tune," "programmer," "block plate," "straight pipe," or any other device designed to override, modify, or alter any component of a vehicle's emissions control system.

d. "Tampered vehicle" means any vehicle that has been modified pursuant to "vehicle tampering."

Please submit the following certification to:

Chief, Criminal Division
U.S. Attorney's Office for the District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

1

## Certifications

ELITE DIESEL SERVICE, INC. ("the defendant" or "the Company"), through its duly authorized representative, certifies the following with respect to any of its owners, employees, agents, or contractors:

for the time frame of _____ through _____,

1. The Company has not engaged in, conspired with, or caused others to engage in, vehicle tampering.

2. The Company has not worked on, repaired, or serviced (1) the OBD system; or (2) any hardware relating to the emissions control system, including the SCR, EGR, PTOX, DPF, and DOC; for any tampered vehicle.

3. If the Company has performed work on the OBD and/or emissions control system of a tampered vehicle for the purpose of restoring the emissions control system on the tampered vehicle to its certified configuration, that is, restoring it to stock, please identify any such vehicles in an Attachment by year, make, model, engine serial number, and VIN.

4. The Company has not knowingly engaged in any violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).

5. If the Company is unable to make any of the above certifications, the Company shall detail why in an Attachment to this Certification.


I, as a duly authorized representative of ELITE DIESEL SERVICE, INC., certify under penalty of perjury that the foregoing is true and correct.


_____        _____
Signature                             Date


_____
Name and Title